Dear Representative Childers:
This opinion is in response to your questions pertaining to the implementation by a third class county of the alternative form of county highway commission provided for in Sections230.200 to 230.260, RSMo 1986. Your questions can be summarized as follows:
 (1) Is it legally binding that a county road plan shall be prepared by a qualified engineer or firm and approved by the State Highways and Transportation Commission, Section 230.235?
 (2) If legally binding, what penalties are involved for noncompliance?
 (3) Is it legally binding that under Section 230.240, the County Highway Commission shall employ a qualified graduate civil engineer as County Highway Engineer whose services shall be available to any incorporated municipality in an advisory capacity at no charge with said engineer having general supervision of operations subject to approval of the County Highway Commission?
 (4) If legally binding, what penalties are involved for noncompliance?
In the words of the courts, your question is whether Sections 230.235 and 230.240 are mandatory (legally binding) or directory (optional). These statutes provide:
Section 230.235, RSMo 1986:
 Every county adopting sections 230.200
to 230.260 shall formulate a comprehensive road plan establishing a systematic program for the development and improvement of county roads. The plan shall be prepared by a qualified civil engineer or engineering firm familiar with road and highway engineering, and shall be approved by the state highways and transportation commission.
Section 230.240, RSMo 1986:
 1. In addition to the comprehensive road plan required by section 230.235, all counties of the third class adopting sections 230.200 to 230.260 shall employ a qualified graduate civil engineer as county highway engineer; except that, any person serving as county highway engineer on the date the county for which he serves adopts the provisions of sections 230.200 to 230.260 may be retained as county highway engineer and shall be considered qualified for that position within the meaning of sections 230.200 to 230.260. The county highway commission shall appoint the county highway engineer and shall set his salary to be paid out of the road and bridge fund of the county. The services of the engineer shall be available in an advisory capacity to any incorporated municipality within the county at no charge to the municipality.
 2. The county highway engineer shall have general supervision over the construction, maintenance, repair and reconstruction of all public highways, roads, bridges and culverts, subject to the approval of the county highway commission.
The principles for deciding whether the statutes are of a mandatory or directory nature have been stated as follows:
 There is no absolute or universal rule by which statutory provisions may be distinguished and classified as mandatory or directory . . ., and resolution of the ultimate issue in most cases is not materially simplified or substantially facilitated by reiteration of general principles expressed in broad, expansive language. It will suffice to say that "`(g)enerally speaking, those provisions which do not relate to the essence of the thing to be done and as to which compliance is a matter of convenience rather than substance are directory, while the provisions which relate to the essence of the thing to be done, that is, to matters of substance, are mandatory'" . . ., but that, in each instance, the "`prime object is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject of legislation and the general object intended to be accomplished.'" [citations omitted] State ex rel. Hopkins v. Stemmons, 302 S.W.2d 51, 53 (Mo.App. 1957); accord, State ex inf. Taylor ex rel. Borgelt v. Pretended Consolidated School Dist. No. 3 of St. Charles County, 240 S.W.2d 946, 950
(Mo. 1951).
 As explained by our Supreme Court, the mandatory-directory dichotomy ordinarily "arises in determining whether failure to comply with a statutory provision makes an act or proceeding void . . . [w]hen the statute creates an official duty in the interest of the public it is a different matter; and when the General Assembly imposes such a duty upon a public officer, he has no discretion as to whether or not it should be performed." State ex rel. McTague v. McClellan, 532 S.W.2d 870, 871
(Mo.App. 1976); quoting State ex rel. Taylor v. Wade, 231 S.W.2d 179, 181-182
(Mo. banc 1950).
 Generally, the use of the word "shall" imposes a mandatory duty upon the official charged by statute with its performance. . . . That is particularly true where, as here, "shall" is contrasted with the use of "may" in describing another procedure in the same statutory section. Citizens for Rural Preservation, Inc. v. Robinett, 648 S.W.2d 117, 132 (Mo.App. 1982); accord, State ex rel. McTague v. McClellan, supra, at 872.
Missouri courts have also held that mandatory statutes, in addition to requiring the doing of the thing specified, also prescribe the result that will follow if they are not done; if directory, their terms are limited to what is required to be done. Hudgins v. Mooresville Consol. School Dist.,312 Mo. 1, 278 S.W. 769, 770 (1925). However, this is not an absolute rule. State ex inf. Taylor ex rel. Borgelt v. PretendedConsolidated School Dist. No. 3 of St. Charles County, supra,
at 950. As in State ex rel. Taylor v. Wade, supra, andState ex rel. McTague v. McClellan, supra, when the question is simply whether an official is required to do something and there is no issue as to the validity of an act or proceeding, the focus of the inquiry as to whether the statute is mandatory is on whether the duty was created "in the interest of the public".
The application of the above principles to questions (1) and (3) leave little doubt that the duties imposed on the county highway commission by Sections 230.235 and 230.240 are mandatory. Both sections require acts whose effect is to enhance the public safety and welfare as well as requiring acts which relate directly to the accomplishment of the powers of the county highway commission. The powers of the commission involve the "improvement, construction, reconstruction, restoration and maintenance of roads . . . ." Section 230.230, RSMo 1986. It is self-evident that a well-planned, well-built and well-maintained road system is essential to the public safety, to the economy of both farm and urban enterprises and to the general social welfare. The General Assembly has made the requirements of Sections 230.235 and 230.240 an integral part of the structure of the county highway system, requiring professional planning as well as professional supervision of the actual work. Furthermore, the General Assembly used the word "shall" to describe the duties in each section and there is no indication that the General Assembly meant anything other than to invoke the general rule that "shall" means mandatory. This is particularly true when within the same set of statutes the General Assembly used "may" in Section 230.250 to indicate that the commission has the option, not the duty, to designate a certain amount of the county roadway to become part of the permanent supplementary state highway system. Citizens forRural Preservation, Inc. v. Robinett, supra, at 132.
In deciding on the mandatory nature of a law, the courts will also consider the effects of construing the law to be either mandatory or directory. State v. Paul, 437 S.W.2d 98,101 (Mo.App. 1969). It is essential in any system of building and maintaining of a road system to have a comprehensive plan as well as professionally supervised work. If the counties with the alternative form of county highway commission could treat Sections 230.235 and 230.240 as being directory only, the plain purpose of the General Assembly in setting up a county highway commission and requiring certain standards of its work would be thwarted.
Interpreting Sections 230.235 and 230.240 as being mandatory is in accordance with the conclusion reached in Missouri Attorney General Opinion No. 48, Kesterson, March 18, 1943, a copy of which is enclosed, wherein this office opined that counties were required to set up a county highway commission under Article 2 of Chapter 46, RSMo 1939.
 If the County Highway Commission Act should be considered as directory, then the various County Courts of the State by not following its provisions could nullify the Act. Another statutory construction which might be applicable here is that the Legislature should not be held to have enacted a meaningless statute. After considering this entire Act we are convinced that the lawmakers have intended that it be mandatory and that its provisions be carried out by the various County Courts. Id. at page 3.
As for questions (2) and (4), there are no penalties set forth in Sections 230.200 to 230.260 for failing to follow Sections 230.235 and 230.240. Nevertheless, the commissioners must obey the law.
 The protection of the public and the declared public policy requires public officials to comply with mandatory statutory provisions, and such requirements may not be avoided by a compliance only when the official sees fit to comply. Fulton v. City of Lockwood, 269 S.W.2d 1, 8 (Mo. 1954).
To enforce this principle, the legislature enacted Sections106.220 to 106.290, RSMo 1986. Section 106.220 provides:
 Any person elected or appointed to any county . . . office in this state, except such officers as may be subject to removal by impeachment, who shall fail personally to devote his time to the performance of the duties of such office, or who shall be guilty of any willful . . . violation or neglect of any official duty, . . ., shall thereby forfeit his office, and may be removed therefrom in the manner provided in sections 106.230 to 106.290.
See also Section 531.010, RSMo 1986, which provides for removal from office by proceedings in quo warranto.
CONCLUSION
Therefore, it is the opinion of this office that the provisions of Sections 230.235 and 230.240, RSMo 1986, are required to be implemented by third class counties which have adopted the alternative form of county highway commission.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
Enclosure:
Opinion No. 48, Kesterson, March 18, 1943